01

02

03

04

05

06

07
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
08
AT SEATTLE

09  SUSAN HARRINGTON,                        )
                                             )   Case No. 06-1396-MJP-JPD
10            Plaintiff,                      )
                                             )
11       v.                                  )
                                             )
12  MICHAEL J. ASTRUE, Commissioner,         )   REPORT AND RECOMMENDATION
    Social Security Administration,          )
13                                           )
              Defendant.                     )
14  _____ )

15          Plaintiff Susan Harrington appeals the final decision of the Commissioner of the Social

16  Security Administration ("Commissioner") which denied her applications for Disability

17  Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and

18  XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and 1381 *et seq.*, after a hearing

19  before an administrative law judge ("ALJ").  For the reasons set forth below, the Court

20  recommends that the Commissioner's decision be REVERSED and REMANDED for an

21  award of benefits.

22                        I.  FACTS AND PROCEDURAL HISTORY

23          Plaintiff is a forty-six year-old woman with a GED and some post-high school

24  education.  Administrative Record ("AR") at 64, 69, 87.  Her past work experience includes

25  employment as an accounts supervisor, accounts administrator, accounts payable staff person,

26  and office manager.  AR at 17.  She suffers from piriformis syndrome and chronic pain

REPORT AND RECOMMENDATION
PAGE – 1

01  syndrome.  AR at 18.  She has an alleged onset date of May 19, 2001.  AR at 69.

02  The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 16.

03  On December 6, 2004, a disability hearing was held before the ALJ, who eventually concluded

04  that plaintiff was not disabled and denied benefits based on his finding that plaintiff could

05  perform her past relevant work.  AR at 340-72, 29.  Plaintiff's administrative appeal of the

06  ALJ's decision was denied by the Appeals Council, AR at 5-7, making the ALJ's ruling the

07  "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  Plaintiff

08  timely filed the present action challenging the Commissioner's decision.  Dkt. No. 3.

09  II.  JURISDICTION

10  Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

11  405(g) and 1383(c)(3).

12  III.  STANDARD OF REVIEW

13  Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

14  social security benefits when the ALJ's findings are based on legal error or not supported by

15  substantial evidence in the record as a whole.  *Bayliss v. Barnhart,* 427 F.3d 1211, 1214 (9th

16  Cir. 2005).  "Substantial evidence"  is more than a scintilla, less than a preponderance, and is

17  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

18  *Richardson v. Perales*, 402 U.S. 389, 201 (1971);  *Magallanes v. Bowen*, 881 F.2d 747, 750

19  (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

20  medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

21  53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

22  whole, it may neither reweigh the evidence nor substitute its judgment for that of the

23  Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence

24  is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

25  must be upheld.  *Id.*

26  If this Court determines that the ALJ committed reversible error, it has the discretion

REPORT AND RECOMMENDATION
PAGE – 2

01  to remand for further proceedings or to award benefits.  *McCartey v. Massanari*, 298 F.3d

02  1072, 1076 (9th Cir. 2002).  Remand for further proceedings is appropriate where additional

03  proceedings would remedy defects in the ALJ's decision, *Rodriguez v. Bowen*, 876 F.2d 759,

04  763 (9th Cir. 1989), and where the Commissioner is in a better position to evaluate the

05  evidence.  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  Remand for an award of

06  benefits is preferred where "the record has been fully developed and further administrative

07  proceedings would serve no useful purpose." *McCartey*, 298 F.3d. at 1076.  More specifically,

08  erroneously rejected evidence should be credited and an immediate award of benefits directed

09  where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [certain
> pertinent] evidence, (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made, and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled were such
> evidence credited.

13  *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *see also Harman v. Apfel*, 211 F.3d

14  1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when

15  all three elements are met).

## IV.  EVALUATING DISABILITY

17          As the claimant, Ms. Harrington bears the burden of proving that she is disabled within

18  the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113

19  (9th Cir. 1999)  (internal citations omitted).  The Act defines disability as the "inability to

20  engage in any substantial gainful activity" due to a physical or mental impairment which has

21  lasted, or is expected to last, for a continuous period of not less than twelve months.  42

22  U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her

23  impairments are of such severity that she is unable to do her previous work, and cannot,

24  considering her age, education, and work experience, engage in any other substantial gainful

25  activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see*

26  *also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

REPORT AND RECOMMENDATION
PAGE – 3

01       The Commissioner has established a five step sequential evaluation process for

02 determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§

03 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At

04 step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at

05 any step in the sequence, the inquiry ends without the need to consider subsequent steps.

06 Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20

07 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the

08 Commissioner proceeds to step two. At step two, the claimant must establish that she has one

09 or more medically severe impairments, or combination of impairments, that limit her physical

10 or mental ability to do basic work activities. If the claimant does not have such impairments,

11 she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe

12 impairment, the Commissioner moves to step three to determine whether the impairment

13 meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§

14 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for

15 the required twelve-month duration requirement is disabled. *Id.*

16       When the claimant's impairment neither meets nor equals one of the impairments listed

17 in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

18 residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the

19 Commissioner evaluates the physical and mental demands of the claimant's past relevant work

20 to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

21 If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

22 true, then the burden shifts to the Commissioner at step five to show that the claimant can

23 perform other work that exists in significant numbers in the national economy, taking into

24 consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§

25

26       [1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

01  404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the

02  claimant is unable to perform other work, then the claimant is found disabled and benefits may

03  be awarded.

## V.  DECISION BELOW

On April 28, 2005, the ALJ issued a decision finding:

1.  The claimant meets the nondisability requirements for a Period of Disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 2006.

2.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.  The claimant's piriformis syndrome and chronic pain syndrome are considered "severe" based on the requirements in the Regulations at 20 C.F.R. §§ 404.1520(c) and 416.920(c).

4.  These medically determinable impairments do not meet or medically equal any of the listed impairments in 20 C.F.R., Appendix 1 to Subpart P of Part 404.

5.  The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.  The claimant has the following residual functional capacity.  She can occasionally lift 20 pounds, frequently lift ten pounds, stand and/or walk for six hours in an eight-hour workday with a sit/stand option, sit for two hours in an eight-hour workday with a sit/stand option, and do unlimited pushing and pulling.  She cannot climb ladders, ropes, or scaffolds.  She can occasionally balance.  She must avoid hazards such as heights.

7.  The claimant's past relevant work did not require the performance of work-related activities precluded by her residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).

8.  The claimant's medically determinable piriformis syndrome and chronic pain syndrome do not prevent the claimant from performing her past relevant work.

9.  The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. §§ 404.1520(f) and 416.920(f).

AR at 28-29.

REPORT AND RECOMMENDATION
PAGE – 5

01          VI.  ISSUES ON APPEAL

02     There remain two principal issues on appeal:

03     1.     Did the ALJ err in rejecting plaintiff's testimony and finding her not
              credible?
04
05     2.     Did the ALJ err in his assessment of the medical evidence, and
              particularly, the opinion of treating physician David Jackson, M.D.?

06 Dkt. No. 12 at 1.

07          VII.  DISCUSSION

08     A.     The ALJ Erred in His Assessment of the Plaintiff's Testimony and Credibility

09          As noted above, it is the responsibility of the ALJ to determine credibility, to settle

10 conflicts in medical testimony, and to resolve any other ambiguities that might exist. *Andrews*,

11 53 F.3d at 1039.  However, once a claimant produces medical evidence of an underlying

12 impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms

13 solely because they are unsupported by objective medical evidence. *Reddick*, 157 F.3d at 722

14 (citations omitted).  Absent affirmative evidence showing that the claimant is malingering, the

15 ALJ must provide clear and convincing reasons, supported by substantial evidence, for

16 rejecting the claimant's testimony.  *Id.*  "General findings are insufficient; rather, the ALJ must

17 identify what testimony is not credible and what evidence undermines the claimant's

18 complaints."  *Id.*[2]  Here, there is no evidence that the plaintiff was malingering.

19 Consequently, the ALJ was required to provide clear and convincing reasons to reject the

20 claimant's testimony.

21          The plaintiff testified that she suffered from, *inter alia*, what has been diagnosed as

22 piriformis syndrome.  This is a rare and little understood medical condition caused by very

23

24          [3]  The ALJ may consider ordinary techniques of credibility evaluation, including a
   reputation for truthfulness, inconsistencies in testimony, or between testimony and conduct,
25 daily activities, work record, and testimony from physicians and third parties concerning the
   nature, severity, and effect of the symptoms of which the claimant complains. *Light v. Social
26 Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citations omitted); *Smolen*, 80 F.3d at 1284.

REPORT AND RECOMMENDATION
PAGE – 6

01  tight muscle constriction in the buttocks region which places undue pressure on the sciatic

02  nerve, causing chronic pain.  AR at 335-38.  Although this condition is little understood, the

03  Medical Expert ("ME") in this case testified that the plaintiff's piriformis syndrome "is well-

04  described."  AR at 364.  He stated that the syndrome produces symptoms similar to those

05  complained of by the plaintiff, but is not something that can be visualized by imaging.  AR at

06  365-66.  The ME also testified that the subjective symptoms as described by the plaintiff were

07  reasonable and credible as associated with the syndrome, but added that he was unable to

08  evaluate the intensity of the symptoms on the plaintiff.  AR at 366.

09         The ALJ found the plaintiff to be less than credible.  AR at 28-29.  To support this

10  finding, the ALJ cited:  (1) the lack of objective medical evidence; (2) inconsistencies

11  regarding the extent of prior earnings; (3) daily activities; (4) failure to seek emergency care;

12  and (5) failure to follow treatment.  None of these purported bases constitute clear and

13  convincing reasons supported by substantial evidence to reject the plaintiff's testimony.

14                        1.    *Lack of Objective Medical Evidence*

15         As discussed above, piriformis syndrome is characterized as not susceptible of being

16  imaged.  AR at 366.  The condition is "diagnosed primarily on the basis of symptoms and on

17  the physical exam.  There are no tests that accurately confirm the diagnosis, but X-rays, MRI

18  and nerve conduction tests may be necessary to exclude other diseases."  AR at 335.  The ME

19  confirmed that the plaintiff's symptoms were consistent with a diagnosis of piriformis

20  syndrome.  This was also the diagnosis of the plaintiff's treating physicians.  Nevertheless, the

21  ALJ's opinion is replete with the theme that the lack of objective medical evidence doomed

22  plaintiff's credibility.  "[C]laimant complains of severe back pain without any objective

23  findings" (AR at 18); "claimant's MRI was unremarkable" (AR at18); "[t]he undersigned

24  notes the lack of objective findings" (AR at 19); "[t]he undersigned notes that claimant's

25  symptoms did not correspond with objective findings"  (AR at 20); "[a] CT scan of claimant's

26  pelvis on that date was normal." (AR at 23).

REPORT AND RECOMMENDATION
PAGE – 7

01   The ALJ made an adverse credibility determination based in part on the lack of

02 objective medical evidence for a condition that is characterized as having little, if any,

03 objective evidence. This does not provide a clear and convincing reason supported by

04 substantial evidence to reject the plaintiff's testimony. *See Reddick*, 157 F.3d at 722.

05        2. *Inconsistency Regarding Extent of Claimant's Prior Earnings*

06   In an attempt to disparage the plaintiff's credibility, the ALJ noted that the plaintiff

07 testified that she had an income of $44,000 before her onset, and dropped to an income of

08 $339 per month in state assistance. AR at 356. However, her earnings record showed that

09 her highest salary was $36,495. AR at 25. The Commissioner argues that this fact constitutes

10 a basis for the Court to affirm the ALJ's adverse credibility determination. Dkt. No. 13 at 10.

11   Inconsistencies or inaccuracies in testimony can form the basis for an adverse

12 credibility determination. *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995). However,

13 the inaccuracies must constitute clear and convincing reasons to reject the proffered testimony

14 or the claimant's overall credibility. *Id.*; *Smolen*, 80 F.3d at 1284. Variances of income

15 estimates received during a period of 1997 through 2001 given at a hearing that took place in

16 late 2004, without the benefit of records, hardly qualify as material inconsistencies sufficient to

17 produce the clear and convincing reasons required under governing law. *Light*, 119 F.3d at

18 792 (citations omitted); *Smolen*, 80 F.3d at 1284. There is no relationship between this

19 inconsistency or inaccuracy and the testimony offered by the plaintiff. Accordingly, this

20 inconsistency, standing alone, does not provide a clear and convincing reason supported by

21 substantial evidence to reject plaintiff's testimony or her overall credibility.

22        3. *Daily Activities*

23   In his opinion, the ALJ held that the plaintiff's daily activities were not consistent with

24 the pain she testified experiencing and that such activities were consistent with a finding of

25 nondisability. AR at 27. Specifically, the ALJ cited to the fact that the plaintiff attended

26 church, visited with her mother, and took her niece and nephew to soccer practices. AR at 27.

REPORT AND RECOMMENDATION
PAGE – 8

01  He also pointed out that the plaintiff was able to prepare her own meals, wash dishes, oil paint,

02  grocery shop, and that she made a trip to Lake Chelan, which involved a four-hour car ride.

03  AR at 27.

04        In *Orn v. Astrue*, ___ F.3d ___, 2007 WL 2034287 (9th Cir. July 16, 2007), the Ninth

05  Circuit reaffirmed the principle that a claimant's ability to carry on certain daily activities does

06  not in any way detract from a claimant's credibility. *Id.* at *12 (quoting *Vertigan v. Halter*,

07  260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact

08  that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or

09  limited walking for exercise, does not in any way detract from her credibility as to her overall

10  disability.")).  Instead, daily activities can form a ground for an adverse credibility

11  determination only "if the claimant is able to spend a *substantial* part of her day performing

12  household chores or other activities that are transferable to a work setting." *Smolen*, 80 F.3d

13  at 1284 (emphasis added); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("The

14  Social Security Act does not require that claimants be utterly incapacitated to be eligible for

15  benefits, and many home activities are not easily transferable to what may be the more grueling

16  environment of the workplace, where it might be impossible to periodically rest or take

17  medication." (citations omitted)).  Here, the ALJ failed show how any of the alleged activities

18  were transferrable to a potential work setting.

19        Moreover, the ALJ failed to note the consequences of some of the activities he cited.

20  For example, the claimant did, indeed, travel with others to Lake Chelan.  However, the ALJ

21  failed to note that the plaintiff traveled as a passenger in a reclined position, and then suffered

22  several days for doing so.  AR at 354-55, 254, 288.  Similarly, when plaintiff drove her

23  nephew to a soccer practice, she would often lie down in her car or go home.  AR at 360.

24  When she attended church services, she stood in the back, instead of sitting down.  AR at 346.

25  Afterwards, she was required to lie down to compensate.  AR at 346, 356-57.  The mere fact

26  that plaintiff could sporadically perform some of these activities does not signify that she is

REPORT AND RECOMMENDATION
PAGE – 9

01 capable of continuously and consistently performing in a structured work environment. *See* 20

02 C.F.R. § 404, Subpt. P., App. 2, § 200.00(c) (defining RFC as "the maximum degree to which

03 the individual retains the capacity for *sustained* [work].") (emphasis added); *Burch*, 400 F.3d

04 676, 681 (9th Cir. 2005) (stating that adverse credibility finding based on activities may be

05 proper "if a claimant engages in numerous daily activities involving skills that could be

06 transferred to the workplace").

07      The ALJ also failed to note that in many of her doctors' reports, the physicians noted

08 that the plaintiff stood or curled up during the medical examinations. *See, e.g.*, AR at 287,

09 288, 290, 300. This was due to the fact that sitting was too painful for her.

10      There is nothing in the plaintiff's daily activities, when properly analyzed as to how

11 they were performed and the resulting pain, that supports a finding that plaintiff is able to

12 spend a substantial part of her day engaged in pursuits involving the performance of physical

13 functions that are transferrable to a work setting.

14                          4.   *Failure to Seek Emergency Care*

15      The ALJ also believed a person in the position of the plaintiff would have many more

16 trips for emergency care than the plaintiff's medical history demonstrates. However, the ALJ

17 asked the plaintiff no questions regarding the absence of emergency visits. Rampant

18 speculation cannot serve as a substitute for substantial evidence. In this case, the plaintiff is

19 suffering from a chronic condition. She testified that she copes by lying down much of the

20 time, and has difficulty sitting or standing for any lengthy period. Moreover, she apparently

21 takes morphine three times a day to cope with the pain she is suffering. She has found

22 alternatives to emergency care, and given her indigent position, finding alternatives should

23 come as no surprise. *See Smolen*, 80 F.3d at 1284 (inability to afford treatment due to

24 unemployment or lack of insurance constitutes a "good reason" for not seeking additional

25 treatment, and a claimant's "symptom testimony cannot be rejected for not doing so"). An

26 adverse credibility finding cannot be sustained by the ALJ's speculation.

REPORT AND RECOMMENDATION
PAGE – 10

01          5.    *Failure to Follow Treatment*

02          The final justification for the ALJ's adverse credibility determination is that the plaintiff

03 allegedly failed to follow prescribed treatment.  The Commissioner contends that the plaintiff

04 (a) insisted on obtaining a steady supply of narcotic pain medications and did not taper them

05 despite Dr. Jackson's recommendation to lessen the possibility of narcotics tolerance; (b)

06 avoided physical therapy; and (c) did not follow up on Swedish Hospital's recommendation

07 for another pain clinic.  Dkt. No. 13 at 11-12.

08          The failure to taper use of pain medication, prescribed by a physician, can hardly be

09 said to be inconsistent with claims of pain.  It may have been unwise for the plaintiff to have

10 not shifted from prescription pain remedies to lessen the possibility of narcotics tolerance, but

11 that has no bearing on the plaintiff's credibility as to pain she is sustaining.  Moreover, this was

12 not explicitly cited by the ALJ as a basis for his adverse credibility determination.

13          As to the alleged avoidance of physical therapy, the record proves just the opposite.

14 The plaintiff attended twelve out of twelve physical therapy visits and experienced some

15 improvement.  Unfortunately, she used her maximum DSHS insurance benefits, and had no

16 ability to pay for further treatment.  AR at 242, 254.  Her inability to pay, however, cannot be

17 used as a means to draw adverse credibility determinations against the plaintiff when she

18 sought treatment when she could afford it, but did not when she could not afford to do so.

19 *Orn*, ___ F.3d at ___, 2007 WL 2034287 at *12; *Smolen*, 80 F.3d at 1284.

20          The ALJ claims that the plaintiff "failed" the pain clinic at Swedish Hospital.  AR at 27.

21 The Commissioner, citing the record in support of the ALJ (AR at 142-44), maintains the

22 same.  Dkt. No. 13 at 11-12.  A review of the record does not reveal what "failing" the pain

23 clinic means; nor does it reveal anything consistent with a possible "failure."  To the extent

24 that the ALJ believed that she lacked credibility because she did not consult a pain

25 psychologist, the ALJ failed to note that the plaintiff was not opposed to seeing a pain

26 psychologist, but had no insurance coverage to pursue this option.  AR at 183.  As noted

01  above, the inability to pay in this case cannot form the basis of an adverse credibility

02  assessment under *Orn*. *See also Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)

03  ("Disability benefits may not be denied because of the claimant's failure to obtain treatment he

04  cannot obtain for lack of funds.").

05          Finally, the Court cannot overlook the witness testimony offered by the plaintiff's

06  mother.  She appeared at the hearing and was ready to testify.  However, the ALJ refused to

07  listen to her testimony and instead insisted that it be submitted in writing after the hearing.  AR

08  at 363.  The plaintiff did so.  *See* AR at 129.  The written witness statement offers compelling

09  corroboration of the impact of the plaintiff's condition.  The plaintiff is driven by her mother to

10  her medical appointments because she cannot sit to drive.  She was unable to attend her son's

11  high school and fire-fighting academy graduations because she cannot sit for extended periods.

12  She was unable to attend her son's basic training graduation in San Antonio, Texas, because

13  she cannot sit on an airplane for an extended period.  She eats and pays her bills lying down or

14  standing.  *Id.*  The ALJ said he gave "some weight" to her mother's statement, but noted that

15  it also shows that the plaintiff participates in some activities that she said she did not.  This,

16  once again, falls short of the ALJ's obligations in assessing credibility.  He did not state what

17  was believable and what was not believable, as required by law.  *Smolen*, 80 F.3d at 1284;

18  *Reddick*, 157 F.3d at 722.

19          Lay witness testimony as to a claimant's symptoms or how an impairment affects the

20  ability to work is competent evidence that cannot be disregarded without discussing the

21  reasons therefore and making express credibility findings.  *Nguyen v. Chater*, 100 F.3d 1462,

22  1467 (9th Cir. 1996); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  Because the

23  ALJ refused to take the testimony as proferred, he was not in a position to assess the

24  credibility of the plaintiff's mother.  As such, even though he did not totally discredit the

25  mother's testimony, he is in no better position to assess credibility as far as the mother is

26  concerned than this Court is.  Missing the family activities mentioned above constitutes

REPORT AND RECOMMENDATION
PAGE – 12

01  powerful corroborating evidence of the extent of the pain felt by the plaintiff when she sits,

02  and probative evidence of her overall credibility.

03      The ALJ is responsible for making credibility determinations, and this Court is not

04  authorized to substitute its judgment for that of the ALJ. *Thomas*, 278 F.3d at 954.

05  However, that power is not unfettered.  Absent affirmative evidence showing that the claimant

06  is malingering, the ALJ must provide clear and convincing reasons, supported by substantial

07  evidence, for rejecting the claimant's testimony. *Reddick*, 157 F.3d at 722.  The ALJ failed to

08  do so.

09      B.      The ALJ Erred in His Evaluation of the Medical Evidence

10      The plaintiff also claims that the ALJ erred in his evaluation of the medical evidence.

11  Dr. Jackson has been a primary treating physician for the plaintiff since 1998. AR at 297.  In

12  December 2004, he opined:

13          I feel strongly that she is completely disabled.  She cannot tolerate sitting for
            more than ten minutes at a time.  She can much better tolerate standing, but
14          standing in one place would be limited to four hours per day.  Lifting is limited
            to a maximum of twenty pounds occasionally, and a maximum of five pounds
15          frequently.  Squatting or kneeling, bending or stooping, crawling or climbing
            could be done only rarely.  Fine manipulation or reaching overhead would not
16          be a problem.  Operating hand controls would not be a problem either.

17          I have not seen any significant improvements nor significant worsening in the
            patient's condition in the last four years.  I don't except [*sic*] any significant
18          change in the future.

19  AR at 298.

20      In his opinion, the ALJ claimed he gave Dr. Jackson's opinion "significant" weight,

21  with only "slight modifications." AR at 27.  He found no basis in the record for restrictions on

22  lifting limited to twenty pounds and frequently lifting ten pounds.[3]  He also stated there was no

23  basis for bending, squatting or stooping restrictions. *Id.*  Although he professed that he gave

24  Dr. Jackson's opinion significant weight with only "slight modifications," he did not address,

25  _____

26      [3] If the plaintiff can lift only five pounds frequently as Dr. Jackson stated rather than ten
    pounds as the ALJ determined, the plaintiff is unable to perform "light" work under the
    Regulations. *See* 20 C.F.R. §§ 404.1567, 416.967.

REPORT AND RECOMMENDATION
PAGE – 13

01  either positively or negatively, Dr. Jackson's limitations of sitting no more than ten minutes at

02  a time or restrictions on standing in the same place for no more than four hours.  In his RFC,

03  the ALJ determined that the plaintiff can

04       occasionally lift 20 pounds, frequently lift ten pounds, stand and/or walk for six
     hours in an eight-hour workday with a sit/stand option, sit for two hours in an

05       eight-hour workday with a sit/stand option, and can do unlimited pushing and
     pulling.  She cannot climb ladders, ropes of scaffolds.  She can occasionally

06       balance.  She must avoid hazards such as heights.

07  AR at 29.

08         To support his findings, the ALJ placed "significant weight" on a state agency physical

09  RFC assessment.  AR at 22.  It was approved by non-examining physician Harold Meyer,

10  M.D.  AR at 236-41.  The ALJ adopted the report, stating is was consistent with the bulk of

11  the evidence of record, but that the record did not support stooping and crouching restrictions

12  contained in the assessment.  AR at 22.  The underlying report concluded that the plaintiff

13  could sit six hours in an eight-hour workday as long as she periodically shifted between

14  standing and sitting on an every two-hour basis.  AR at 237-38.  The doctor noted "Clmt's

15  etiology of pain has not been determined as all testing, including an MRI, CT of the pelvis,

16  EMG injections, and a discogram have been relatively benign or nonspecific in identifying the

17  generator of her pain."  AR at 237.  It is apparent that the state agency reviewing doctor was

18  persuaded by the absence of objective symptoms.  As discussed above, this cannot constitute

19  substantial evidence, particularly when the impairment is characterized by a lack of objective

20  symptoms.  Moreover, the report's statement that the plaintiff could sit for six hours in an

21  eight-hour workday, as long as she alternated between sitting and standing every two hours,

22  was so inconsistent with the plaintiff's actual limitations that it was not adopted by the ALJ.

23  Nevertheless, the ALJ decided to give it "significant weight."  AR at 22.

24         In *Orn*, the Ninth Circuit reiterated the significance of treating physicians' reports and

25  the weight they are to be given.  *Orn*, ___ F.3d at ___, 2007 WL 2034287 at *4-5.  By rule,

26

REPORT AND RECOMMENDATION
PAGE – 14

01    the Commissioner favors the opinion of a treating physician over non-treating physicians. *Id.*

02    at *4 (citing 20 C.F.R. § 404.1527). If a treating physician's opinion is not accorded

03    "controlling weight" because it is not "well-supported" or because it is inconsistent with other

04    substantial evidence in the record, the Commissioner considers specified factors in determining

05    the weight it will be given. *Id.* "Those factors include the '[l]ength of treatment relationship

06    and frequency of examination' by the treating physician; and the 'nature and extent of the

07    treatment relationship' between the patient and the treating physician." *Id.* (quoting 20 C.F.R.

08    § 404.1527(d)(2)(i)-(ii)). "Generally, the opinions of examining physicians are afforded more

09    weight than those of non-examining physicians, and the opinions of examining non-treating

10    physicians are afforded less weight than those of treating physicians." *Id.*

11          Dr. Jackson has been treating the plaintiff since 1998. AR at 297. In this case, the

12    ALJ stated he gave Dr. Jackson's RFC assessment "significant weight, with only slight or

13    adjustments." AR at 27. He did not. He also claimed his RFC assessment (of light work)

14    corresponded to Dr. Jackson's opinion. *Id.* As discussed above, it did not. The ALJ failed to

15    properly evaluate the medical evidence and, most particularly, that of Dr. Jackson. This error

16    was compounded by the ALJ's decision to give a non-reviewing physician's opinion the same

17    "significant weight," when it was clearly inconsistent with Dr. Jackson's opinion, and when the

18    non-treating physician's opinion was premised on lack of objective findings in a case involving

19    piriformis syndrome.

20          C.      This Matter Should Be Remanded For the Award of Benefits

21          The ALJ found that with this RFC, the plaintiff could engage in her past relevant work

22    as an accounts supervisor, which is light work with an SVP level of 6; an accounts

23    administrator, which is sedentary work with an SVP of 6; or an office manager, which is

24    sedentary work with an SVP of 8. AR at 28. The ALJ based this finding on the testimony of

25    a Vocational Expert ("VE") to whom he gave great weight, because the VE "had the unique

26    opportunity to review the entire file." AR at 28. The VE also testified that if the plaintiff's

REPORT AND RECOMMENDATION
PAGE – 15

01  testimony was fully credible, there would be no jobs for the plaintiff in the national economy.

02  AR at 368.  As discussed above, the ALJ erred in his adverse credibility determination.

03  Accordingly, disability benefits are properly awarded.

04        Moreover, after the VE testified that the plaintiff could do her previous jobs, he was

05  asked on cross-examination what he understood the ALJ was asking regarding limitations on

06  sitting and standing.  The VE testified that when he answered the question, he believed the

07  ALJ was posing a hypothetical wherein the plaintiff would be able to stand not more than two

08  hours in an eight hour work day.  AR at 369.  After being corrected, he changed his testimony

09  to signify sitting for not more than two hours in an eight hour day.  When asked about the

10  impact of maximum length of time for sitting before standing, he testified that changing

11  positions every thirty seconds or so would not be reasonable, but that changes every fifteen

12  minutes would be.  AR at 379-80.  When asked if the worker required periodic thirty-minute

13  periods to lie down, the VE said this would preclude the hypothetical claimant's prior work.

14  AR at 371.

15        In this case, "the record has been fully developed and further administrative

16  proceedings would serve no useful purpose."  *McCartey*, 298 F.3d at 1076.  Furthermore, the

17  evidence of record would require the ALJ to find the plaintiff disabled during the relevant

18  period.  Under these circumstances, and in light of the length of time between the plaintiff's

19  application and the present, this matter should be remanded with a direction for the award of

20  benefits.

21                          VIII.  CONCLUSION

22        For the foregoing reasons, the Court recommends that this case be REVERSED and

23  REMANDED for an award of benefits.  A proposed order accompanies this Report and

24  Recommendation.

25

26

REPORT AND RECOMMENDATION
PAGE – 16

01        DATED this 21st day of August, 2007.

02                                           _James P. Donohue_____

03                                           JAMES P. DONOHUE
                                             United States Magistrate Judge
04

05

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION
PAGE – 17